ROBERTSON, Judge.
This is a termination of parental rights case.
On November 6, 1989, the juvenile court terminated the parental rights of Mary Thompson to her two children, R.W.T. and K.T.
The juvenile court, which ordered that the parental rights to each child be terminated in two separate orders, made the following findings in both orders:
“This cause first came on for hearing on a dependency petition, filed on October 5, 1987, by the Jefferson County Department of Human Resources alleging inadequate care. On September 28, 1987, the child[ren] herein had been placed voluntarily by the mother with the Children’s Aid Society of Birmingham, Alabama, on a boarding home agreement due to the parents’ inability to care for the child[ren].
“On November 10, 1987, this court placed custody of the child[ren] herein with Byron and Eileen Hullett, maternal uncle and aunt, ordering the Jefferson County Department of Human Resources and the parents to cooperate in obtaining numerous services needed by the parents.
“On March 9, 1988, at a dispositional review hearing, custody of the child[ren] herein was placed with [the] Jefferson County Department of Human Resources, with whom custody has remained to the date of the present hearing.
“The parents in this cause have had a very unstable marriage with numerous separations. The mother has accused the father of sexually abusing [one of the children]. In fact, in March of 1988, [one of the children] herein was diagnosed of having trichimonis [sic], a sexually transmitted disease.
“The mother has been medically treated in 1988 for a mental illness, and all home sites of the parents have been found to be littered and filthy. Although the mother did complete basic parenting skills classes, she and the father have only sporadically attended marital counseling, which has been deemed necessary to resolve their marital instability. The mother has also refused the assistance of Homemakers and in home service to assist in basic homemaking skills. The father, while referred to vocational rehabilitation services as well as to the Social Security Administration for benefits due to low mental functioning, has followed up on neither referral.
“The father refused to sign a service agreement with [the] Jefferson County Department of Human Resources and visitation with the child[ren] herein, *807 which occurred infrequently, has shown inappropriate parenting from both parents.
“At the time of this [termination] hearing the mother is pregnant with twins by someone other than her husband. Due to her pregnancy, she cannot take her medication prescribed for her mental illness.
“It appears to this court that the mother and legal father in this cause are unable and unwilling to discharge their responsibilities to and for the minor child[ren] herein;
“The court finds that the [children are dependent children] under the age of eighteen years and in need of care and protection;
“The court also finds that the Jefferson County Department of Human Resources has provided best efforts in attempting to provide services to rehabilitate the parents in this cause and that placement exists for the children in this matter.
“There being no other reasonable alternatives for placement other than the termination of the parent’s rights in this cause, it is hereby ordered that all parental rights which the mother, Mary Thompson, and the legal father, Ralph Thompson, have in and or to the care and custody of [these children] be and are hereby severed and, the permanent custody is placed with [the] Jefferson County Department of Human Resources.”
Only the mother appeals, asserting that the termination of her parental rights was in error as there were less drastic alternatives to termination available.
Thus, although the state must first prove dependency by clear and convincing evidence when terminating parental rights, we will review only whether the court considered and rejected all alternatives to termination so that it could conclude that the termination was in the child’s best interests. Ex Parte Beasley, 564 So.2d 950 (Ala.1990).
We note that the court, in its order, specifically concluded that no other alternatives to termination existed. However, the mother presents five other alternatives, which she asserts are less -drastic alternatives to termination; they are: (1) placing the children with their father’s half-brother; (2) placing the children in the parents’ home on a trial visit under the supervision of the Department of Human Resources (DHR); (3) placing the children in their parents’ home on a permanent basis; (4) supervision by DHR of the nature and duration of the visitation to be determined by the trial court; and (5) directing DHR to use reasonable efforts to plan for the prompt reunification of the family.
When a trial court is presented evidence ore tenus, a presumption of correctness attaches to its judgment, and, unless that judgment is so unsupported by the evidence that it is plainly and palpably wrong, we will affirm. Beasley.
Initially, we note that we have carefully reviewed the record and find the trial court’s order to be such a succinct summary of the evidence that we adopt it here. However, we specifically note the following facts: DHR has been working with the mother since 1987. The mother has been prescribed Thorazine to control behavior problems; however, due to her present pregnancy, she has been taken off the drug.
The marriage of the parents is at best unstable, and their efforts to attend counseling have been sporadic. In fact, the mother is currently pregnant, possibly with twins, by someone other than the husband.
During the hospitalization of one of the children, the parents were instructed to give the child only clear liquids. However, they attempted to feed the child potato chips.
When DHR attempted to enter service agreements with the parents and tried to discuss their parenting skills, the parents would get angry and deny any problem existed concerning the care they gave their children.
In short, the record evidence supports the trial court’s order and indicates that DHR has already attempted to preserve *808 this family unit and has been unsuccessful. Thus, the alternatives suggested by the mother on appeal concerning placement of the children with the mother and father were properly rejected by the trial court.
Finally, we examine the mother’s contention that the father’s half-brother is a viable alternative to termination. A DHR caseworker testified that the mother informed him of the relative resource. However, he also testified that he instructed the mother to have the relative contact him, and, as of the day of trial, DHR had received no communications from this relative.
It was not until the day of the termination hearing that this relative offered to take custody of the children. Further, the caseworker testified that he saw no viable alternative to termination.
In view of the length of time the children had been in foster care, the mother’s inability to make appropriate adjustments so as to properly care for her children, and the instability of her marriage to the children’s father, we affirm the trial court’s decision that no reasonable alternative to termination existed.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
INGRAM, P.J., and RUSSELL, J., concur.